STROH BREWERY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16537. Promulgated June 28, 1929.

*H. A. Mihills, C. P. A.*, for the petitioner.
*John D. Foley, Esq.*, and *Lloyd W. Creason, Esq.*, for the respondent.

## OPINION.

SMITH: The original petition filed in this proceeding alleged error on the part of the respondent in that he failed to allow deductions for obsolescence of good will and for obsolescence of a brew house and machinery. It related solely to the calendar year 1918, although the deficiency notice from which the appeal was taken disclosed deficiencies for the years 1919 and 1920 as well. At the hearing counsel for the petitioner abandoned its claims for obsolescence of good will and for obsolescence of machinery and filed an amended petition covering the years 1918, 1919, and 1920, in which it is alleged that the respondent erred in reducing invested capital and in refusing to allow certain deductions for obsolescence of physical property.

Counsel for the respondent objected to the receipt of so much of the amended petition as relates to the years 1919 and 1920 and read into the record an amended answer which denied the allegations of error contained in the amended petition. He admitted, as an allegation of fact, paragraph (d) (11) of the amended petition, reading as follows:

The taxable income prorated to June 26, 1918, was $131,095.36. Respondent in computing invested capital for the year 1918 determined a tentative tax

for the year of $92,981.58, which sum when prorated to June 26, 1918, resulted in reducing the amount of income available for dividends in the amount of $44,834.94.

No petition having been filed with respect to the years 1919 and 1920 within the jurisdictional time, we can not consider that portion of the amended petition offered at the hearing which relates to those years. From that portion of the amended petition which relates to the year 1918 and from the amended answer it appears that the issues before us are (1) whether invested capital for the year 1918 may be reduced on account of a tentative tax computed on the income of the taxable year for the purpose of ascertaining the amount of current earnings available for payment of dividends up to June 16, 1918; (2) whether the petitioner is entitled to the deduction from gross income on account of obsolescence of the unused portion of a brew house; and (3) whether the petitioner is entitled to a deduction from gross income on account of obsolescence of a stock house.

With respect to the first issue, it is well settled that invested capital may not be reduced on account of a tentative tax computed on the income for the year in determining the amount of current earnings available for the payment of dividends, and we so hold in this proceeding. *Commissioner* v. *Pittsburgh Knife & Forge Co.* (C. C. A.), 30 Fed. (2d) 522, affirming *Pittsburgh Knife & Forge Co.*, 6 B. T. A. 1083; *L. S. Ayers & Co.*, 1 B. T. A. 1135.

Counsel for the petitioner stated at the hearing that its contention with respect to the brew house is based entirely upon absolute nonuse of one-half of that building, and that it was making no claim whatsoever on the one-half of the building, together with the equipment contained therein, which was in use. The Revenue Act of 1918 provides in part as follows:

SEC. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

\* \* \* \* \* \* \*

(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise;

\* \* \* \* \* \* \*

(7) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence.

The evidence shows that, subsequent to the effective date of statewide prohibition in the State of Michigan and throughout the remainder of the taxable year under review, the petitioner employed its brew house in the manufacture of near beer. The evidence also clearly shows that the brew house was just as well adapted for, and just as efficient in, the brewing of near beer as it was for the manufacture of lager beer. Under these circumstances, can it be said that the

brew house became obsolete in 1918? We think not. Consequently, no allowance could be made for obsolescence of so much of the brew house and machinery as was employed by the petitioner in the conduct of its business during the year 1918 and, as stated above, the petitioner makes no claim for any such allowance.

The petitioner does claim—and the second issue in this proceeding is limited solely to such claim—that it is entitled to an allowance for obsolescence of approximately one-half of its brew house, which the petitioner contends it never used. However, the testimony adduced at the hearing relative to this issue can only be regarded as evidence of the fact that the petitioner did not make use of the space or of any of the facilities contained in such one-half portion, inasmuch as the brew house constituted a single structural unit and it is clear that all of its walls, floors, ceilings, etc., were employed in the maintenance of the whole.

The business of the petitioner for the year 1913 was larger than it had been for any year prior thereto, and in 1916 its business was very considerably larger than it had been in 1913. Even so, however, the 850-barrel capacity of the one brewing unit installed in the brew house was not taxed to capacity. Consequently, while the evidence conclusively supports the contention of the petitioner that it had never used, either during the year 1918 or prior thereto, any of the space or facilities contained in the west side of its brew house, it also shows that at no time prior to the year 1918 did the petitioner contemplate immediate use of such space or facilities. On the contrary, the employment of such space or facilities was wholly prospective.

After the effective date of prohibition in the State of Michigan the petitioner still had the opportunity to manufacture near beer. It is true that a greater hardship may have been thrust upon it in that it was faced with the necessity of building up a business in near beer and soft drinks. However, prohibition legislation did not serve to cut off or eliminate the uses for which the brew house was constructed, inasmuch as it was just as efficient for the manufacture of near beer under the dealcoholization method employed by the petitioner as it was for the manufacture of real beer. Even the latent possibilities of the unused portion of the brew house were present, but perhaps not to so great an extent.

The effect of prohibition legislation was to cause the petitioner to convert its prior business into one in many respects very similar thereto. It did not have for its effect the prevention of all the business activity of the petitioner with respect to its brew house. It still owned facilities used in the manufacture of near beer and soft drinks and it did not follow, necessarily, that the unused facilities of its

brew house would never be used merely because the petitioner changed its business from that of the production of real beer to that of the production of near beer and soft drinks. Having never used the space or facilities contained in a portion of its brew house, it can not claim that it was compelled to discontinue their use. Cf. *Baltimore County Jeffersonian Printing & Publishing Co.*, 8 B. T. A. 941; also, *Max S. Rosenthal*, 3 B. T. A. 1349.

In *Marigold Garden Co. et al.*, 6 B T. A. 368, we had under consideration a case where the usefulness of business property was lost to a taxpayer through the operation of the prohibition law and the property, instead of being abandoned or sold, was placed in storage. In deciding that case we said:

It seems clear that property is not *ipso facto* lost to a taxpayer because it is no longer useful to him. Ownership and possession still exist, and in some cases value may not wholly disappear. Value and usefulness are not necessarily interdependent, even though they very commonly look to each other for support. The want of either does not make certain the absence of the other. It should be kept in mind that the considerations in ascertaining net income must always be expressed in money and that all the factors relied upon must be translated into terms of money. Use is only significant to the extent that it is susceptible of such expression. No one would urge that an income deduction may be claimed because a fixture or tool proves less useful than expected when the purchase was made. Until the investment is converted into terms of money by sale or other disposition or its worthlessness otherwise demonstrated, there is neither loss nor gain and income is neither greater nor less.

So when we put aside the legislative cause of petitioners' misfortune, and find further that the evidence shows only that the glass could no longer be used by petitioner in its business, we are still far removed from the establishment of such a loss as offsets income. It is not necessary to consider whether we should be brought closer if no sale or disposition could have been made after reasonable effort, for there is no evidence of an effort; and voluntary storage is not a final disposition. * * *

In the instant proceeding testimony was offered by the petitioner to the effect that a brew house one-half the size of the one in question would have cost approximately $180,000. Otherwise, the record is silent as to the value of unused space and facilities contained in the west portion of petitioner's brew house. Consequently, even if it be conceded, for the sake of argument, that the petitioner is entitled to a deduction for obsolescence with respect to the west portion of its brew house, we could not determine from the record what would constitute a reasonable allowance for such obsolescence, since the evidence presented by the petitioner can not be accepted as proof of the value of the unused space and facilities.

Under these circumstances we are convinced that the respondent must be sustained in disallowing a deduction for obsolescence of petitioner's brew house.

The third issue involves petitioner's claim to an allowance for obsolescence of a stock house. This building was erected for the purpose of storing beer under refrigeration. The evidence shows that after May 1, 1918, the effective date of state-wide prohibition, the building and its equipment were just as efficient for the purposes for which they were designed and erected as they were before; that they were in use throughout the taxable year for such purposes; and that not until some time in the year 1920 was their use discontinued. The evidence further shows that in 1918 the petitioner had reasonable grounds for believing that some time in the future it would no longer use the stock house in question. Such belief was based in part upon information gathered from investigations into the operations of other breweries which, because of prohibition legislation, had engaged in the manufacture of near beer, and in part upon the large excess storage capacity which existed in its own plant at all times subsequent to May 1, 1918. The evidence does not disclose, however, at what future date the petitioner believed it would discontinue the use of the stock house. Obsolescence is defined as the state of becoming obsolete and obsolete is defined as meaning " no longer in use; disused; neglected." *Webster's New International Dictionary*. We have held that obsolescence is the state or process of becoming obsolete, and the state of obsoleteness is reached when the property which can not be used for any other purpose is no longer useful for the purpose for which it was acquired. *Columbia Malting Co.*, 1 B. T. A. 999. The right to an obsolescence deduction must be based upon substantial reasons for believing that·assets would become obsolete prior to the end of their ordinary useful life; and it must have been known, or believed to have been known, to a reasonable degree of certainty, under all the facts and circumstances, when that event would likely occur. *Columbia Malting Co., supra; Cleveland Home Brewing Co.*, 1 B. T. A. 87; *Renziehausen* v. *Commissioner* (C. C. A.), 31 Fed. (2d) 675; affirming *Frederick C. Renziehausen*, 8 B. T. A. 87. Cf. *Peter Breidt Co.*, 2 B. T. A. 1190, in which we said:

Upon the evidence, the only change made in the taxpayer's business, when it transferred its activity from beer to soft drinks and near beer, was the enlargement of its bottling department. That occurred in 1917. The identical machinery and equipment were used after prohibition as before. * * * How can we say there was obsolescence of property when it was actually used and sold to be used? " Obsolescent is the state or process of becoming obsolete." *Appeal of Columbia Malting Co.*, 1 B. T. A. 999. A reduction in value does not necessarily prove the property to be obsolete or obsolescent * * *.

and *George Wiedemann Brewing Co.*, 9 B. T. A. 792, in which we said:

\* \* \* We have had occasion, heretofore, to consider similar contentions and have reached the conclusion that the deduction representing the decreasing value in use of assets continued in the same or related business is not allowable. Cf. *Yough Brewing Co.*, 4 B. T. A. 612; *Rienzi Co.*, 4 B. T. A. 1011; *Star Brewing Co.*, 7 B. T. A. 377. \* \* \*

In view of the foregoing, we are of the opinion that the petitioner is not entitled to a deduction from gross income for the year 1918 of an allowance for obsolescence of its stock house.

*Judgment will be entered under Rule 50.*